UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DANIEL C. ROSECRANS,** | ) | **CASE NO. 1:15CV128** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **VILLAGE OF WELLINGTON,** | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter comes before the Court upon the Motion for Summary Judgment of Defendant Wellington (ECF # 26). For the following reasons, the Court grants Wellington's Motion for Summary Judgment.

### I. BACKGROUND

Plaintiff, Daniel C. Rosecrans, ("Rosecrans") has been a part time police officer since 1991. He alleges that he was discriminated against on the basis of age when Defendant, Village of Wellington, ("Wellington") chose not to appoint him to a position of a full-time police officer in June 2014. Rosecrans alleges he was passed over for a promotion to the full-time police officer position in favor of Josh Poling ("Poling"), a younger officer he supervised

while working at the Lorain County MetroParks ("MetroParks").  At the time he was passed over, Rosecrans was forty-seven years old, while Poling was thirty-one years old.  The candidates were reviewed by the Village of Wellington Police Committee, which then recommended a candidate to council.  According to Wellington, then Councilman Schneider ("Schneider") had concerns regarding Rosecrans' suitability for the position because of Rosecrans' disciplinary history.  Indeed, during his employment at the MetroParks, Rosecrans was subjected to a Last Chance Agreement as a result of erasing data on the hard drive from his work computer.  According to Wellington, Rosecrans then resigned, due to his demotion; according to Rosecrans, because he was required to travel a further distance to work and changes in other responsibilities.  Despite having been employed by the MetroParks for over twenty years, Rosecrans' resume failed to list the MetroParks as an employer.  Thus, according to Wellington, there were concerns that Rosecrans failed to even identify the MetroParks on his application materials in light of the general knowledge of the situation surrounding Rosecrans' resignation.  Rosecrans alleges that he wished to list only his most current employment.

After reviewing the applications, it was determined that Poling would be recommended for the position to the Village Council, which approved the recommendation.  Rosecrans states that Interim Chief of Police Barrett ("Chief Barrett") advised him that he did not get the position due to a situation involving a School Resource Officer position, the events occurring at the MetroParks and "other problems" that were not discussed.  With respect to the School Resource Officer position, Rosecrans stated that the Wellington Board of Education created a position and he was approached by the school superintendent about the

2

position.  Rosecrans believes he was subsequently retaliated against because his appointment would have resulted in a loss of earnings by other officers.  Rosecrans also asserts that a retired officer he worked with for several years affirmed that Rosecrans was more qualified and that he had a conversation with Defendant Barbara O'Keefe, former Mayor of Wellington at the time of the incidents in question, where she raised concerns about the ability of Rosecrans to pass a physical examination required for a full-time patrol officer position.  However, Rosecrans has not brought a claim for disability discrimination.

Rosecrans generally alleges that he was not chosen for the full-time Wellington police officer  position due to his age but admits that no one at the Village told him that the decision was based on age.  To the contrary, Chief Barrett told Rosecrans he was a valuable asset to the police department and felt that other opportunities may arise for him.  Rosecrans remained employed at the Village in his part-time capacity until his resignation from that position in the summer of 2015.

On September 28, 2014, Rosecrans filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"),  alleging he was denied promotion from part-time to full-time police officer due to his age.  Rosecrans's EEOC Charge alleged this action violated the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA") and constituted retaliation under these statutes.  Rosecrans obtained a right to sue letter from the EEOC and filed his Complaint in this Court, alleging Age Discrimination in violation of theADEA (Count I) and Ohio Revised Code ("O.R.C.") Sections 4112.02, 4112.14 (Counts II & III) and Hostile Work Environment under § 4112 and § 4112.99 (Count IV) and Retaliation under O.R.C. §§ 4112.02 and 4112.99 (Count V).

Rosecrans filed the within suit against the Village and Mayor O'Keefe. Following briefing on a Motion to Dismiss, the Court dismissed all claims against O'Keefe as well as all state law claims. The sole remaining claim is a claim against Wellington under the ADEA (Count I) based on the decision not to appoint Rosecrans to the full-time police officer position in June of 2014.

## II. LAW AND ANALYSIS

**A) Standard of Review**

Summary Judgment should be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R.Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v Catrett,* 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. V. Espy,* 39 F. 3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but most come forward with some significant probative evidence to support its claim. *Celotex,* 477 U.S. at 324; *Lansing dairy*, 39 F.3d at 1347.

The "mere existence of *some* alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v Liberty Lobby, Inc.* 477 U.S. 242, 247-48 (1986) (emphasis in original); *accord Leadbetter v Gilley,* 385 F. 3d 683, 689-90 (6th Cir. 2003).  A fact is only material if its resolution "might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248.

  The Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hospital Ass'n.,* 78 F. 3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees,* 980 F. 2d 399, 404-06 (6th Cir. 1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson*, 477 U.S. at 249-50; and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a mater of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F. 3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**B) Direct evidence of age discrimination**

  According to Wellington, Rosecrans has no direct evidence of age discrimination. Direct evidence is "evidence [that], if believed, requires the conclusion that age was the "but for" cause of the employment decision...the inquiry includes both a predisposition to discrimination and that the employer acted on that predisposition." *Scheick v. Tecumseh Public Schools,* 766 F.3d 523, 530 (6th Cir. 2014).  Direct evidence "proves the existence of a

fact without requiring any inference." *Id.* Wellington argues that Rosecrans admits that no one at the Village stated that his age was related to the decision not to appoint him to the full-time position. Rosecrans also denies having spoken with any members of the Police Committee or Village Council with respect to the hiring decision and does not know what factors were considered in making the appointment decision. Wellington notes that Rosecrans alleged that Chief Barrett identified three reasons why Rosecrans was not hired, including issues surrounding the School Resource Officer position, Rosecrans's discipline with Metroparks and "other issues." Therefore, according to Wellington, Rosecrans has presented no direct evidence of age discrimination.

According to Rosecrans, direct evidence requires the conclusion that discrimination was at least a motivating factor in the actions of the employer and can be shown by an employer's statement showing discriminatory motive. *Wexler v. White Fine Furniture, Inc.* (6th Cir. 2003), 217 F.3d 564, 570. Rosecrans argues that Kobasher, another police officer, alleges that he had a conversation with O'Keefe prior to June 2014, where she raised concerns about the ability of Rosecrans to pass a physical examination. Rosecrans contends that this statement was made by the person making the employment decision in this case and that it can be interpreted as a concern for Rosecrans' physical condition due to his age.

Wellington's Reply in support of its Motion argues that there is no evidence that the alleged statement was made in connection with the decision on the full-time appointment. Indeed, the only information offered as to the timing of the discussion is that it occurred "prior to June 2014" but there are no other details about the context of this discussion. Wellington correctly counters that "statements by nondecisionmakers, or statements by

6

decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden ... of demonstrating animus." *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998). Thus, according to Wellington, because there is no evidence linking the alleged discussion to the decision making process, this alleged discussion does not constitute direct evidence of age discrimination. Further, Wellington insists that Rosecrans states in his Affidavit that he "interpreted" the alleged comment as an ageist remark. Moreover, O'Keefe did not mention age nor used terms or euphemisms that are synonymous with age. Wellington argues that comments such as "people over fifty take longer to heal" or that a company should hire or wanted to hire young aggressive people have been found too ambiguous to constitute direct evidence of age discrimination. *Gibbs v. Voith Indus. Services, Inc.,* 60 F.Supp. 3d 780, 792 (E.D. Mich. 2014); *Hart v. Ridge Tool Co.,* 544 F.Supp.2d 634, 638 (N.D.Ohio 2008). According to Wellington, a comment regarding the ability to pass a physical examination is just as, if not more, ambiguous than those previously held not to constitute direct evidence of age discrimination.

Age-discrimination claims can be proven in one of two ways: with direct evidence of discrimination or by establishing a prima facie case of discrimination. Direct evidence is evidence that proves the existence of a fact without requiring any inferences. *Kozlevcar v. Tom Ahl Buick, Inc.*, No 3:05CV07483, 2007 WL 2344782 at *5 (N.D. Ohio Aug 15, 2007) citing *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078 (6th Cir. 1994). This evidence cannot be based on vague, ambiguous, or isolated remarks. *Kozlevcar* at *5. Instead, the evidence must require the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. *Id.* citing *Jacklyn v. Schering-Plough Healthcare*

*Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Here, Rosecrans alleges that Kobasher's declaration regarding O'Keefe's statement about the inability of Roscrans to pass a physical examination is direct evidence of age discrimination. However, such statement, out of context, is too ambiguous and isolated because there is no inherent link to age. Further, as Defendant correctly argues, "statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden ... of demonstrating animus." *Bush,* at 369. Rosecrans has not demonstrated that the statement was made in connection with the decision not to hire Rosecrans. Indeed, there is no evidence regarding the context and the timing of the discussion between O'Keefe and Kobasher, except for "prior to June 2014," which is vague. Therefore, Kobasher's declaration is not direct evidence of age discrimination.

**C) Indirect evidence of age discrimination**

As Wellington correctly asserts, Rosecrans may prove discrimination by circumstantial evidence, showing that: (1) he was at least forty years old at the time of the alleged discrimination, (2) he was subject to an adverse employment action, (3) he was otherwise qualified for the position, and (4) he was replaced by a younger worker. *Weatherby v. Federal Express,* 454 F.Appx. 480, 489 (6th Cir. 2012). If a plaintiff makes this showing, then the burden of proof shifts to the defendant to articulate a non-discriminatory reason for its action. *Marsh v. E. Associated Estates Realty Corp.,* 521 F.Appx. 460, 466 (6th Cir. 2013). However, the burden of persuasion remains on the ADEA plaintiff to demonstrate that age was the "but-for" cause of the employer's adverse action. *Geiger v. Tower Automotive,* 579 F.3d 614, 620 (6th Cir. 2009). It is undisputed that Rosecrans was over forty

years old at the time of the decision, that Rosecrans was likely qualified for that position and was not appointed to that position and that Officer Poling was younger than Rosecrans. However, according to Wellington, Rosecrans is unable to show that his age was the "but-for" reason. Wellington contends that all other full-time police officers at that time were over forty years of age and that the interim police chief, who was appointed during this time period, was over forty years of age. Also, the council members who voted on the recommendation were over forty years of age. Further, Wellington argues that Rosecrans believes there were multiple reasons why he was not appointed *i.e.*, that he was retaliated against for being approached for the School Resource Officer position and that he was perceived as unable to pass the physical examination. Therefore, according to Wellington, these allegations present a mixed motive claim because Rosecrans alleges that a protected classification (age) was a motivating factor for the employment decision, even though other factors also motivated the decision. 42 U.S.C. §2000e-2(m). Wellington asserts that a plaintiff alleging age discrimination cannot proceed on a mixed motive theory but rather, must show that he would have received the position had his age not been a consideration. *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 174-175 (2009). Therefore, Wellington contends that because Rosecrans identifies several factors, he cannot show that consideration of his age was the "but-for" cause that he was not appointed.

  Rosecrans argues that he has submitted a declaration, along with the Memorandum in Opposition, unequivocally stating that Poling was chosen over him based on age. Further, Rosecrans contends that O'Keefe and Schneider, who attended the Police Committee meeting to discuss staffing issues, did not reference any concerns about the School Resource Officer

9

Position with Wellington. Also, Rosecrans insists that Chief Rollins, who would have been the individual angered regarding the School Resource Officer position, was retired at the time of June 2014. Therefore, according to Rosecrans, the argument that this case presents a mixed-motive question or that factors other than age motivated the decision not to hire Rosecrans are inaccurate.

Wellington counters in its Reply in Support of its Motion that even though Rosecrans now alleges that he believes age was the sole reason for the decision, "the ultimate burden of persuasion in an age discrimination case always remains with Plaintiff." *Gross v. FBL.* According to Wellington, Rosecrans admitted during his deposition that there were other factors than age and cannot now attempt to create a genuine issue of fact by contracting his deposition testimony. *Aerel, S.R.L. PCC Airfoils, LLC.,* 448 F.3d 899, 907 (6th Cir. 2006). Further, Wellington counters that Rosecrans, in his deposition, not only testified that Chief Rollins, now retired, was the individual concerned about the School Resource Officer position, but also that Council members Maurer, Denes and Schneider retaliated against him based on an alleged dispute surrounding the selection of the School Resource Officer position. Therefore, according to Wellington, Rosecrans is only attempting to maintain an impermissible mixed motive case.

Here, it is undisputed that Rosecrans was over forty years old at the time of the decision, that Rosecrans was likely qualified for that position and was not appointed to that position, and that Officer Poling is younger than Rosecrans. Therefore, Plaintiff has established a prima facie case of age discrimination.

**D) Wellington's Legitimate, Nondiscriminatory Reasons or Pretext For Age**

**Discrimination**

If Plaintiff demonstrates a prima facie case of age discrimination, then the burden of proof shifts to the Defendant to articulate a non-discriminatory reason for its action. *Marsh v. E. Associated Estates Realty Corp.* Wellington has presented nondiscriminatory reasons for the adverse employment action. The first reason presented by Wellington is that the Council was aware of the past discipline of Rosecrans at MetroParks after he deleted data from a computer hard drive owned by MetroParks. The second reason presented by Wellington is that the Council had concerns regarding the ability of Rosecrans to maintain a full-time position because they honestly believed that he had resigned rather than face a criminal investigation. The third reason given by Wellington is that the Council was concerned that Rosecrans failed to disclose his employment with the MetroParks. Finally, Wellington states that Poling was highly recommended. Because these issues are nondiscriminatory, Defendants argue they have met their burden. Moreover, Rosecrans admitted having deleted data from a computer owned by MetroParks and admitted he failed to disclose his employment with the MetroParks in his resume. Therefore, Wellington presented valid nondiscriminatory reasons for hiring Poling instead of Rosecrans. According to Wellington, the decision not to appoint Rosecrans to the full-time position was the result of these legitimate, non-discriminatory reasons. Of particular importance to Defendants was the fact that the Council understood that Rosecrans had resigned in the midst of allegations that he had used the MetroPark's computer to further his personal business and that this activity occurred while he was on duty at the MetroParks. The Council believed Rosecrans had resigned in order not to face a criminal investigation and potential prosecution. Thus, these

issues raised concerns regarding Rosecrans' use of his time as a full-time officer. Indeed, Rosecrans admits that he was subjected to a Last Chance Agreement and demoted after it was discovered that he deleted data from a computer hard drive owned by the Metroparks. Rosecrans admits he then resigned but denies that he resigned in lieu of discipline. However, according to Wellington, its honest belief regarding the circumstances of his discipline at the Metroparks is sufficient to establish a legitimate, non-discriminatory reason for the decision not to appoint him. *Majewski v. Automatic Data Processing, Inc.,* 274 F.3d 1106, 1117 (6th Cir. 2001). Rosecrans contends that Officer Poling was also disciplined by the MetroParks. However, it was a three day suspension, which does not rise to the same level of Rosecran's.

In light of the above, the Court finds that Defendants have established a legitimate, nondiscriminatory reason for hiring Poling over Rosecrans.

**Pretext**

Once a defendant articulates a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to prove that the reason of the employment decision given by the employer is pretext. *Blizzard v. Marion Tech. College,* 698 F.3d 275, 285 (6th Cir. 2012). The employee can accomplish this by proving (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [her discharge], or (3) that they were insufficient to motivate discharge. *Id.*

According to Rosecrans, O'Keefe admitted that Council never denied an appointment of any officer or employee of the police department recommended by O'Keefe, therefore, Plaintiff contends O'Keefe had the ultimate authority on hiring decisions for Wellington.

12

Rosecrans argues that O'Keefe gave several contradictory responses regarding the decision to hire Poling. O'Keefe admits that she has known Plaintiff for his entire life and that she has resided within the Village of Wellington for over approximately seventy years, but she states that she does not know how old Rosecrans is and claims she cannot identify the age difference between Poling and Rosecrans. Futher, Rosecrans contends that O'Keefe claims she cannot recall the hiring process of Poling in her deposition even though Wellington employs approximately six full-time officers. Rosecrans notes that O'Keefe, during her testimony, could not recall whether other interviews were conducted or if Poling was interviewed but then recalled some of the details. Moreover, Rosecrans insists that the only reason given by O'Keefe for the hiring of Poling is that Poling came highly recommended from Metroparks via a recommendation letter which has not been identified and was not produced through discovery. O'Keefe could not identify the author or location of said letter. Rosecrans also contends that O'Keefe stated that she did not have any concern nor reservation about any of the candidates. The minutes of the June 16, 2014 Council Meeting record only that upon O'Keefe appointing Poling full-time officer, council approved the appointment by vote, but no information is given about the Police Committee's input or who recommended Poling nor is there any reference to a meeting earlier in June of 2014. O'Keefe testified that the Mayor appoints a candidate for a position based on her own recommendation, the recommendation of the Police Chief or the Police Committee but not appointment stands unless and until Council approves by vote. O'Keefe further testified that Council never rejected one of her appointments.

Council President Hans Schneider provided a declaration attesting that he knew of

Rosecrans discipline history at MetroParks, and his belief that Rosecrans resigned from the MetroParks rather than be subject to a criminal investigation.  Schneider further attests that Rosecrans failure to provide his MetroParks work history on his application was also a matter of concern for Council.  Schneider attests that Poling was recommended by his former employer and that Councilman Maurer knew of Polings work and approved of his hire.

Rosecrans asserts that the discipline reason is  pretext because when Rosecrans was disciplined by Metroparks, Wellington allowed him to work additional hours at Wellington. For the reasons stated above, and because Rosecrans had well over double the amount of Poling's experience and even worked as a supervisor for Poling at Metroparks, Rosecrans argues that the reasons given by Wellington are a pretext for age discrimination against Rosecrans.

Wellington argues that Rosecrans has not raised any allegations that Wellington's proffered non-discriminatory reasons for failing to hire him have no basis in fact because Rosecrans admitted he did not list his employment with the MetroParks on his resume and that he received disciplinary action from the MetroParks.  Also, Wellington contends that Rosecrans challenges whether Wellington's proffered reasons actually motivated his discharge but does so by alleging that Council played no role in the process and that O'Keefe was the "ultimate hiring authority."  According to Wellington, there is insufficient evidence to support those contentions because the Charter only permits the Mayor to make an appointment subject to the approval of Council.  Wellington explains that Council never rejected O'Keefe's recommendations because she took care and consideration in formulating her recommendations.  Wellington asserts that because Rosecrans failed to present any

evidence that O'Keefe's recommendation was the result of age discrimination, Rosecrans cannot show Wellington's proffered reason did not motivate the decision to select another candidate. Moreover, Wellington asserts that Rosecrans did not allege that similarly situated younger individuals were treated differently and did not provide any evidence as to whether the Council knew or approved of Chief Rollins' decision to allow Plaintiff to continue working for Wellington after learning of the Metroparks discipline. Wellington further argues that there is a difference between permitting Rosecrans to continue working in his part-time capacity, knowing of his disciplinary issues with MetroParks, versus appointing him to a full-time position. Indeed, while the concerns raised by Rosecrans' discipline may not have been enough for Wellington to terminate him, it did not mean that Wellington would overlook them in assigning Rosecrans more responsibilities. Wellington concludes that Rosecrans failed to establish a genuine issue of material fact of pretext.

A plaintiff must "put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). So long as an employer honestly believed its proffered reason, an employee cannot show pretext, even if the facts are later shown to be incorrect. *Segel v. Kimberly-Clark Corp.*, 473 F.App'x 416, 421 (6th Cir. 2012); *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998). Courts may not second-guess the business judgment of an employer but must instead determine "whether the employer gave an honest explanation of its behavior." *Hedrick v. W. Res. Care Sys.,* 355 F.3d 444, 462 (6th Cir. 2004). "Time and again we have emphasized that [o]ur role is to prevent unlawful hiring practices, not to act as a super personnel department that second

guesses employers' business judgments." *Corell v. CSX Transp., Inc.*, 378 F.App'x 496, 505 (6th Cir. 2010) quoting *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 399 (6th Cir. 2009).

The inconsistencies in O'Keefe's testimony are not sufficient evidence to prove that the reasons presented by Wellington are pretext, even though the recommendation letter cannot be produced. There are no statements supporting an animus by Defendant based on age. The alleged inconsistencies of O'Keefe's testimony do not appear to be inconsistencies in fact but stem from her lack of memory. She clearly stated age had no basis in her appointment and did not know Rosecrans' or Poling's ages because they are not permitted by law to ask at the interview. She could only approximate his age due to her close relationship with Rosecrans' mother-in-law. She could not recall who recommended Poling.

It is undisputed that the Wellington Village Charter calls for all appointments by the Mayor to be approved by Council before they take effect. Council President Schneider's declaration attests that Poling was recommended by MetroParks and that Councilman and Police Committee member Maurer was familiar with Poling and thought he was appropriate for the position. Schneider attests Council had concerns about Rosecrans's discipline history and failure to disclose his complete work history on the full-time officer application. All of these factors are undisputed. Indeed, Rosecrans failed to present evidence that O'Keefe's recommendation and the Council's appointment were based on age discrimination.

Rosecrans alleges that his discipline history is only a pretext because Wellington allowed him to work additional hours after he was disciplined by MetroParks. However, as Wellington correctly counters, the concerns raised by Rosecrans' discipline may not have been enough to terminate his part-time contract, but were a more significant concern in

assigning Rosecrans the responsibilities of a full-time position. Rosecrans has presented no evidence that the concerns regarding his past discipline were insufficient. Rosecrans admits he was disciplined by MetroParks. That discipline involved a more serious infraction than Poling's as Rosecrans admits he was demoted while Poling incurred a three day suspension for his unidentified infraction. He further admits he did not disclose his twenty plus years of work at MetroParks on his application albeit because he states he only wanted to include his most recent employment. This failure to list Metroparks in light of Defendants belief that there was a criminal investigation about Rosecrans misconduct raised serious red flags for Defendants.

      Therefore, Rosecrans fails to demonstrate that the stated reasons were a pretext for impermissible discrimination and thus, fails to establish a genuine issue of material fact. Consequently, the Court grants Defendant's Motion for Summary Judgment.

      IT IS SO ORDERED.

                                        s/ Christopher A. Boyko
                                        CHRISTOPHER A. BOYKO
                                        United States District Judge

Dated: March 9, 2017